# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 21-1252V**

|  |  |
|---|---|
| RAVIRAJ BHATANE, | Chief Special Master Corcoran |
| Petitioner, | |
| v. | Filed: June 10, 2026 |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

*Michael Avrim Firestone, Marvin Firestone, MD, JD, and Associates, San Mateo, CA, for Petitioner.*

*Mitchell Jones, U.S. Department of Justice, Washington, DC, for Respondent.*

### RULING ON ENTITLEMENT AND DECISION AWARDING DAMAGES[1]

On April 19, 2021, Raviraj Bhatane filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered a left shoulder injury related to vaccine administration ("SIRVA") caused by an influenza ("flu") vaccine administered on December 5, 2018. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

**For the reasons set forth below, I find that Petitioner is entitled to compensation. I also find that Petitioner is entitled to damages of $62,996.49 (consisting of $60,000.00 for pain and suffering, plus $2,996.49 for out-of-pocket expenses).**

---

[1] In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

## I.    Relevant Procedural History

On December 18, 2024, Respondent filed a Rule 4(c) Report opposing compensation, arguing that Petitioner had failed to meet the onset requirement for a Table injury. Respondent's Rule 4(c) Report ("Report"), ECF No. 44. Petitioner filed a Motion for a Ruling on the Record and damages on April 10, 2025. Petitioner's Motion for Ruling on the Record on Entitlement and Damages and Brief in Support, ("Mot.") ECF No. 47. On July 7, 2025, Respondent filed a Response. Respondent's Response to Petitioner's Motion for a Ruling on the Record and Brief in Support of Damages ("Resp."), ECF No. 51. Petitioner did not file a reply. The matter is ripe for resolution.

## II.    Relevant Factual History

On December 5, 2018, Petitioner received a flu vaccine in his left shoulder. Ex. 2 at 20. A month later (on January 7, 2019), he messaged physician's assistant (PA) Marci Camenischi, reporting that his left shoulder "still hurts" after receiving a flu vaccine during his recent annual physical. Ex. 2 at 18. Petitioner complained of limited range of motion ("ROM"), pain, and that he "never experienced anything like this before". *Id*

On January 14, 2019, while in India[3] Petitioner met with orthopedic surgeon Dr. Uday Phute for left shoulder pain and ROM limitations. Ex. 3 at 1.[4] Dr. Phute prescribed medication and advised Petitioner to undergo an MRI. *Id.*

On January 17, 2019, Petitioner made an appointment with PA Camenisch with complaints of left shoulder pain. Ex. 6 at 16. Petitioner reported that "two weeks after the flu vaccine" he could not "abduct the left shoulder more than a few inches" although he was able to move in other directions. *Id.* Physical examination showed limited abduction to about 40 degrees and an inability to pronate his left arm. *Id.* at 17. An x-ray was performed with normal results. Ex. 10 at 139. PA Camenisch diagnosed Petitioner with a left rotator cuff disorder and provided a home exercise program. *Id.*

On January 30, 2019, Petitioner met with orthopedic surgeon Dr. Vivian Chiashin Shihi. Ex. 10 at 147. Petitioner reported left shoulder pain after a flu vaccination in December of 2018. *Id.* He described that "he felt fine for two days after the injection and then the pain began as a feeling of shoulder dislocation." *Id.* Petitioner mentioned that he traveled to India soon after the vaccination, and that his family physician there had

---

[3] Between December 23, 2018 and January 16, 2019, Petitioner was overseas on a trip to India. Ex. 10 at 147.

[4] Exhibit 3 is a note from Dr. Phute to Petitioner's mother which documented Petitioner's visit from two years prior. The note contains no mention of Petitioner's specific onset of pain.

prescribed him a topical cream and anti-inflammatory medication. *Id.* A physical examination showed Petitioner had range of motion deficits and decreased strength in his left shoulder. *Id.* at 149. Dr. Shih diagnosed Petitioner with a likely atypical presentation of adhesive capsulitis. *Id.* at 146.

Petitioner underwent an MRI of the left shoulder on February 6, 2019. Ex. 10 at 168. The MRI revealed a bursal surface tearing of the distal supraspinatus tendon and interstitial tearing of the infraspinatus tendon. *Id.* It also showed an edema of the superolateral humeral head near the attachment of the supraspinatus tendon, possibly due to the injection of the flu vaccine directly into the marrow space. *Id.*

On February 12, 2019, Petitioner had an initial physical therapy appointment. Ex. 5 at 32. Petitioner reported pain in his left shoulder that started after receipt of a flu vaccine in December 2018. *Id.* He also described "intense pain in the shoulder following the shot, but he had to travel to India and noted continued pain and difficulty lifting his arm while he was there." *Id.* Upon examination, Petitioner exhibited range of motion deficits in his shoulder, moderate hypomobility at the glenohumeral joint, poor periscapular strength and stability, and test results that indicated supraspinatus tendonitis. *Id.* at 33. His pain was rated as slight to moderate, specifically between three and five out of ten. *Id.*

Between February 12 - June 13, 2019, Petitioner attended 23 physical therapy sessions. Ex. 9 at 81. His pain was initially noted as three-to-five out of ten in February and early March. Ex. 9 at 39. However, after March 18, 2019, his pain was noted as ranging from zero-to-six with occasional "twinges" at 10/10. Ex. 9 at 42. At Petitioner's final session, he reported his shoulder was "significantly better" with an increased range of motion and pain at one out of ten at worst. *Id.* Petitioner's therapist noted that he had made 95-100% progress in meeting his functional goals and was consistently doing his home exercises. *Id.* at 81-82.

On February 15, 2019, Petitioner returned to Dr. Shih. Ex. 10 at 178. Petitioner reported that his symptoms had improved, but that he was still not at baseline levels with range of motion and pain. *Id.* Petitioner again saw Dr. Shih on April 25, reporting improvement but continued shoulder pain. Ex. 10 at 196.

On March 11, 2021, Petitioner established care with Dr. Meg Tabaka. Ex. 10 at 238. Petitioner reported a history of shoulder pain since his 2018 flu vaccine but stated that he was able to use his left arm normally, aside from mild pain and weakness when lifting. *Id.* Dr. Tabaka opined that Petitioner's weakness was likely residual from experiencing pain and limited mobility in the arm for months and suggested returning to PT. *Id.* at 242. Petitioner chose to continue with home exercises instead. *Id.*

In a declaration dated April 29, 2021, Petitioner confirmed that he received a flu vaccine in December 2018, and felt pain in his shoulder "later that day" which continued for weeks. Ex. 1 at 1. He reported that he was having "more and more trouble" moving his left arm, rating his pain at a level of "7-8/10". *Id.*

### III.    Legal Standards for SIRVA

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must preponderantly prove the matters required in the petition by Vaccine Act Section 11(c)(1). In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[5] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

(i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

(ii) Pain occurs within the specified time frame;

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

---

[5] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury.  *See* § 11(c)(1)(A)(B)(D)(E).

(iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.*, NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are always accurate and complete as to all of the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021). Medical professionals may not "accurately record everything" that they observe or may "record only a fraction of all that occurs." *Id.*

Medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

## IV.    Factual Findings Regarding a Table SIRVA

Review of the entire record reveals that a preponderance of the evidence supports the conclusion that Petitioner has satisfied the QAI requirements for a Table SIRVA.

### A.    Petitioner Had No Prior Left Shoulder Condition or Injury that would Explain his Symptoms

The first requirement for a Table SIRVA is a lack of problems associated with the affected shoulder prior to vaccination. 42 C.F.R. § 100.3(c)(10)(i). Respondent does not dispute that Petitioner meets this criterion. I find that he has demonstrated a lack of history of pain, inflammation, or dysfunction of his left shoulder that would explain his symptoms.

### B.    Onset of Petitioner's Injury Occurred within Forty-Eight Hours of her Vaccination

The record preponderantly establishes onset of injury close-in-time to the December 5, 2018 vaccination. Petitioner first reported shoulder pain on January 7, 2019, approximately one-month post-vaccination, stating that his left shoulder still hurt after his receipt of a flu vaccine. Ex. 2 at 18. Further, he linked his shoulder pain to this same vaccination on multiple occasions. *See, e.g.*, Ex. 10 at 147 (record from January 30, 2019, noting left shoulder pain that started in "the beginning of December 2018 after a flu vaccine"); Ex. 5 at 32 (record from February 12, 2019 reporting left shoulder pain that "started after a flu shot in December").

Respondent argues that Petitioner sought treatment over one month after his vaccination and failed to report onset with any specificity. Report at 6. Further, Petitioner reported his range of motion issues began two weeks post vaccination (ex. 6 at 16), and that he "felt fine for two days" before pain began. Ex. 10 at 147.

While there are some inconsistencies in Petitioner's reporting, when the record is viewed in its entirety there is ample evidence to find proper onset began near in time to the vaccination. Further, Program petitioners are not required to marshal records setting forth with chronographic specificity the precise day and hour that their onset manifested. As noted above, Petitioner reported pain fairly quickly after his vaccination, and repeatedly linked his shoulder pain to the December 5, 2018, vaccination.

Accordingly, there is preponderant evidence that establishes the onset of Petitioner's left shoulder pain more likely than not occurred within 48-hours of vaccination.

### C.    Petitioner's Pain was Limited to his Left Shoulder

Petitioner's pain was limited to his left shoulder. Respondent does not contest this aspect of Petitioner's claim, and there is nothing in the records to suggest otherwise.

**D.      There is No Evidence of Another Condition or Abnormality**

The last criteria for a Table SIRVA state that there must be no other condition or abnormality which would explain a petitioner's current symptoms. 42 C.F.R. § 100.3(c)(10)(iv). Respondent does not contest this aspect of Petitioner's claim.

**E.      Other Requirements for Entitlement**

In addition to establishing a Table injury, a petitioner must also provide preponderant evidence of the additional requirements of Section 11(c). Respondent does not dispute that Petitioner has satisfied these requirements in this case, and the overall record contains preponderant evidence to fulfill these additional requirements.

The record shows that Petitioner received a flu vaccine intramuscularly on December 5, 2018, in the United States. Ex. 2 at 20; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i)(I) (requiring administration within the United States or its territories). There is no evidence that Petitioner has collected a civil award for his injury. Ex. 1 at 4; Section 11(c)(1)(E) (lack of prior civil award). And ROM limitations are established in this record.

Based upon all of the above, Petitioner has established that he suffered a Table SIRVA. Additionally, he has satisfied all other requirements for compensation. I therefore find that Petitioner is entitled to compensation in this case.

**V.      Damages**

Petitioner is seeking $100,000.00 for past pain and suffering, as well as $10,000.00 for future pain and suffering. Mot. at 38.[6] Respondent did not propose a specific amount for pain and suffering, but argues between $25,000.00 and $45,000.00 is appropriate here. Resp. at 7-9.

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact his awareness of his injury. Therefore, I analyze principally the injury's severity and duration.

When performing the analysis in this case, I review the record as a whole to include the medical records, declarations, affidavits, and all other filed evidence, plus the parties' briefs and other pleadings. I consider prior awards for pain and suffering in both SPU and

---

[6] Petitioner also seeks $2,996.49 for unreimbursed out-of-pocket medical and travel expenses. Respondent does not contest these items. Resp. at 3 n.1.

non-SPU SIRVA cases and rely upon my experience adjudicating these cases. However, I base my determination on the circumstances of this case.

The record establishes that Mr. Bhatane's SIRVA involved moderate initial pain, with reports to treaters of immediate symptoms within approximately one-month post-vaccination. Petitioner characterized his pain as "intense", displaying range of motion losses, and reduced strength. Partitioner's pain was described as moderate (three to five out of ten) during his initial physical therapy visits in February of 2019. Ex. 9 at 39. He showed swift improvement during physical therapy. After eight physical therapy sessions, his pain was reported as zero-to-six out of ten with occasional "twinges" of pain at 10/10. *Id.* at 42. As his last session on June 13, 2019, Petitioner reported his shoulder was "significantly better", rating his pain at one out of ten at worst. *Id.* at 81-82.

Overall, Petitioner's treatment occurred over approximately six months, consisted of 23 physical therapy sessions, an MRI, and numerous medical appointments, but no surgical intervention. His pain was described as moderate for the initial three months of treatment, with swift improvement and in March of 2019 his pain was generally described as mild (0-6/10). As of June 13, 2019, Petitioner was reportedly doing much better, described as 95-100% towards meeting his goals. However, he did experience some lingering effects such as mild pain and weakness.

### A. Past Pain and Suffering

Petitioner contends that his injury merits a higher-than median award for pain and suffering, arguing that he suffered significant symptoms. Mot. at 28-29. Further, while he "experienced a strong functional recovery", he continued to suffer residual weakness and discomfort for more than two years post-vaccination. *Id.* He also identified comparable cases that awarded between $110,000.00 and $125,000.00 for pain and suffering.[7] Respondent argues that Petitioner's injury was mild, and an award of $25,000.00 - $45,000.00 is appropriate here. Resp. at 7-9.

Based on the medical records, I conclude that Mr. Bhatane suffered a mild-to-moderate SIRVA for approximately seven months, with some lingering issues thereafter. He sought treatment soon after his vaccination, and initially his pain was mostly reported

---

[7] *Cooper v. Sec'y of Health & Human Servs.*, No. 16-1387V, 2018 WL 6288181 (Fed. Cl. Spec. Mstr. Nov. 7, 2018) (awarding $110,000 for pain and suffering); *Danielson v. Sec'y of Health & Human Servs.*, No. 18-1878V, 2020 WL 8271642 (Fed. Cl. Spec. Mstr. Dec. 29, 2020) (awarding $110,000 for pain and suffering and $7,922 for future pain); *Fry v. Sec'y of Health & Human Servs.*, No. 18-1091V, 2020 WL 8457671 (Fed. Cl. Spec. Mstr. Dec. 16, 2020) (awarding $120,000 for pain and suffering); *Leslie v. Sec'y of Health & Human Servs.*, No. 18-0039V, 2021 WL 837360 (Fed. Cl. Spec. Mstr. Mar. 4, 2021) (awarding $125,000 for pain and suffering).

as moderate (three-to-five out of ten) for the first three months. However, by March 18, 2019 (approximately three months post-vaccination), his pain was reported as more mild, ranging from zero-to-six with occasional twinges. Ex. 9 at 42. Further, Petitioner's treatment was fairly conservative, consisting primarily of 23 physical therapy sessions over five months.

The overall severity of the injury at issue herein is thus not high enough to warrant the $110,000.00 requested by Petitioner (especially since the injury never involved a surgical procedure). I note that the SIRVA cases cited by Petitioner involved more significant treatment over longer periods of time. For example, in *Cooper*, the petitioner's treatment consisted of thirty-five physical therapy sessions over two years, and moderate pain reported for that time. *Cooper*, 2018 WL 6288181 at *12. In contrast, here Petitioner's course of treatment was over approximately six months and he reported significantly lower pain levels throughout his treatment period.

By contrast, I agree with Respondent that this case is more comparable to cases that awarded below-median amounts for a SIRVA. Resp. at 7-9. I find this case most analogous to *Morgan v. Sec'y of Health & Hum. Serv.*, No. 20-1286, 2022 WL 4717958 (Fed. Cl. Spec. Mstr. Sept. 9, 2022) (awarding $63,000.00 for actual pain and suffering). Both Petitioner and the injured individual in *Morgan* experienced a mild SIRVA, underwent treatment for less than a year, and exhibited a good recovery. *Id*. However, while *Morgan* involved less physical therapy (only 16 sessions), the petitioner there did not delay in seeking treatment.

Balancing the severity of Petitioner's SIRVA injury, the course of treatment, and based on the record as a whole, I find that **$60,000.00** for actual pain and suffering is reasonable and appropriate in this case.

### B. Appropriate Compensation for Future Pain and Suffering

I do not include any component of damages for future pain and suffering. Such an award is appropriate only in cases where the claimant preponderantly shows he has suffered a permanent disability, or "other extenuating circumstances that justify inclusion of a future component." *Accetta v. Sec'y of Health & Hum. Servs.*, No. 17-1731V, 2021 WL 1718202, at *5 (Fed. Cl. Spec. Mstr. Mar. 31, 2021). Special masters have previously declined to award a future pain and suffering award in the absence of indicia of permanency. *See,* e.g., *Reed v. Sec'y of Health & Hum. Servs.,* No. 16-1670V, 2019 WL 1222925, at *17 (Fed. Cl. Spec. Mstr. Feb. 1, 2019) (noting there should be "adequate medical evidence demonstrating the likelihood that petitioner's shoulder injury, more likely

9

than not, will extend well into the future and . . . indicating that [a] shoulder injury is permanent").

Petitioner has not established that the sequela of his SIRVA continued beyond June 2019 sufficient to justify a future pain and suffering component. Rather (and as is often emphasized in Program damages determinations), lingering SIRVA symptoms are not the same as permanent deficits, even if the claimant demonstrably continues to experience some post-vaccination and treatment issues. Without specific medical records documenting a permanent injury, or one that is intrusive and will continue into the indefinite future, a future pain and suffering award is not warranted.

Moreover, Petitioner reported his shoulder was "significantly better" as of June 13, 2019. Ex. 9 at 42. Following was a nearly two-year gap before any shoulder complaints were reported. At that time, Petitioner reported he was able to use his arm normally aside from mild pain and weakness when lifting. His treating physician noted that the symptoms were "likely residual from having pain and limited motion in that arm for many months" and did not indicate any permanent injury. These complaints do not equate to ongoing and permanent deficits sufficient to justify future pain and suffering award.

## Conclusion

**For all of the reasons discussed above, and based on consideration of the record as a whole, I find Petitioner is entitled to compensation. Further, I award Petitioner a lump sum payment of $62,996.49 (representing $60,000.00 for actual pain and suffering and $2,996.49 for unreimbursed medical expenses) to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement to Petitioner.**

**This amount represents compensation for all items of damages that would be available under Section 15(a). The Clerk of the Court is directed to enter judgment in accordance with this Decision.[8]**

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master

---

[8] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by each filing (either jointly or separately) a notice renouncing their right to seek review.